Wilson, J.
On February 16, 1901, the city of Colorado Springs, then a city of the second class, having acquired a sufficient population to entitle it under the law to become a city of the first class, the governor caused a proclamation to that effect to be issued and published as required by statute. Laws, 1897, p. 274. In the following month, a city convention of the Republican party was held, at which there was nominated one candidate for alderman for each ward, to be voted for at the coming municipal election to be held on April 2d. The city clerk refused to place upon the ticket the names of the candidates so nominated, and thereupon these candidates, together with the chairman and secretary of the Republican city central committee, instituted this proceeding in mandamus to compel him to place the names upon the ticket. A peremptory writ was awarded by the district court, and from this the respondent city clerk appealed to this court.
The contention on the part of the respondent is that the five aldermen, being one from each ward, who were elected at the April election of 1900 for the term of two years, and who are entitled under the law to hold over for their unexpired term and become aldermen of the city in its new class, constitute the entire membership of the city council of the city in its new class until the April election of 1903, and *252 that hence the city should not elect aldermen at the coming municipal election to be held on April 2, 1901. It is urged on behalf of the petitioners that while the five aldermen elected in 1900 hold over and are entitled to act as aldermen of the city in its new class until the expiration of the term for which they were elected, namely, till April, 1902, nevertheless, the city should elect five other aldermen for the term of two years from April, 1901, thus making the city council for the term of one year begining April, 1901, and ending April, 1902, to consist of ten aldermen, being two from each ward, instead of five aldermen, or one from each ward, as provided by statute generally with reference to cities of the first class.
The case turns purely upon the construction of our own particular statutes, and we are without precedent to guide or authority to aid us. We have been cited to some authorities from other jurisdictions, but we cannot see that they are in point, it being evident that the statutes under consideration differed somewhat from ours. Even if this were not the case, if the language of our statute is not of doubtful import and is such as to admit of easy construction, we would not feel inclined to place much reliance upon the decisions of courts in other states, because even if the statute directly involved were the same as ours, other statutes bearing incidentally upon the same question and tending to throw light upon the legislative intent, might be entirely different.
While a city of the second class, the municipal council of Colorado Springs, consisted of two aldermen from each ward, one to be elected annually at the regular municipal election, and all for the term of two years, so that there would always be in the council two members from each ward, whose terms of service would expire, however, in different years. At every municipal election, there would be one alderman from each ward who would hold over for a year. Laws, 1887, p. 439, sec. 1; Mills, Ann. Stats, sec. 4504. The membership of city councils in cities of the first class was the same until the year 1895, when it was enacted by the legislature that *253 such city councils should consist of one alderman for each ward, who should be elected on the first Tuesday of April of each odd-numbered year, and whose term of service should be two years. Laws, 1895, p. 218, sec. 2; 3 Mills’ Ann. Stats, sec. 4497. As the law originally stood, a city of the second class upon changing its grade to that of a city of the first class, organized by the election of all officers properly belonging to its new grade, and it was specifically provided that on their election and qualification, the term of service of all former officers should expire. Gen. Stats, sec. 3363. In 1891, this section was amended in several particulars, but chiefly and materially by adding thereto the following proviso : “ Provided, that the organization under the provisions of this act of any city of the second class as a city of the first class, shall not be held to wort the removal from office of any alderman of such city of the second class whose term of office will not have expired, but such alderman shall be one of the aldermen for his ward for such city in its new grade. Laws, .1891, p. 374, sec. 1. In 1897, this section was re-enacted with some slight amendments, but the proviso remained the same, so far as it affected the organization of a city of the second class as a city of the first class. Laws, 1897, p. 274, sec. 1.
It is the seeming conflict between this proviso and the act of 1895 requiring the election of only one alderman from each ward in cities of the first class, which gives rise to this controversy. We think the contention of the petitioners is founded upon and sustained by the better reason. If the claim of the respondent be admitted, then the people of the city would be deprived of the right at the first election after the city became one of the first class, to choose any fnembers of the city council, the municipal legislature, which would have the sole control and management of all municipal affairs. Of course, the state legislature might have so enacted if it desired, but unless such intention was clearly expressed, it will not be presumed, the manifest spirit and intent of all our laws relating to the creation of municipal bodies being to give *254 to the people the right of local self-government, including of course the most important right of selection of all municipal officials. Again, if the contention of the respondent be correct, the terms of office of the five hold-over aldermen expire in 1902, and the statute permitting the election of aldermen for cities of the first class only in the odd-numbered years, there would be a hiatus in the city government for one year, from April, 1902, to April, 1908, for which the legislature had made no provision whatever. Counsel contends that the five aldermen elected in April, 1900, would still further hold over until April, 1903, under that general provision of law permitting officers to hold over until their successors are elected and qualified. Without going into the question as to whether these aldermen are such officers as could hold over under that provision of law, we need only say that such legislative intent will not be presumed unless clearly expressed, or necessarily implied in order to carry on the municipal government, and such is not the case here. The language of the proviso to which we have referred is that each of the hold-over aldermen “shall be one of the aldermen for his ward for such city in its new grade.” This might not be conclusive in itself, if there were any reason to qualify or modify the apparent meaning of the language because of the purpose and object sought to be accomplished, as shown by the language used in other sections of the statute pertaining to the subject. We do not discover, however, any such reason. We think the most reasonable construction is that the language was intended to mean exactly what it says, according to the ordinary meaning of the words used.
At the same time when section 3363 was amended by the act of 1891, section 3375 of the same chapter was also amended. Laws, 1891, p. 375, sec. 3. This amendment changed the existing law with reference to the election of mayor, and provided that thereafter the mayor of a city of the first class should be elected biennially in the odd-numbered year, on the first Tuesday in April, for a term of two years, the act specially providing, however, that in case of the organization of cities of *255 the first class in even years, the mayor should, he elected to hold such office only until his successor should be elected and qualified in the next succeeding year. This clearly shows that the attention of the legislature was specially directed to the fact that in changing the terms and the time of election for officers of cities of the first class to the odd-numbered years, a hiatus in the city government might occur, and therefore it specially provided against it. if ow, it seems reasonable to suppose that if its intent with reference to the aldermen was as respondent contends, it would have made some specific provision in regard to it, as it did with reference to the mayor. It is unreasonable to suppose otherwise. Reading together the act of 1895 and that of 1897, to which we have referred,. the proviso in the latter cannot well be otherwise considered than as an exception to the former. If it be contended that the enactment of the statute of 1895, being the later expression of the legislative intent, repealed by implication the proviso in section 4 of the act of 1891, it can he urged with additional force that the act of 1897 re-enacted and reinstated the proviso. By this enactment, considering it in connection with previous legislation on the same subject, the legislature in our opinion clearly manifested the intention that both statutes should stand. They are not necessarily inconsistent, nor irreconcilably in conflict. They in effect constitute one provision, viz, that the city council in a city of the first class shall consist of one alderman from each ward, save in the first year of its existence, when it shall be composed of two aldermen from each ward. The law is mandatory in its requirement that when a second class city becomes a city of the first class, it shall organize by the election of such officials as are necessary and provided by statute for the municipality in its new class. Among these are the aldermen, one from each ward. The statute of 1891 is also equally explicit and mandatory in its provision that the change of class shall not work the removal from office of aldermen of the city of the second class whose term had not expired, and that they should continue to serve as aldermen of the city in its new class until the ex *256 piration of the term for which they had been originally elected. The power of the legislature to make such provision cannot be questioned. It is nowhere provided, however, either in terms or by reasonable implication, that these hold-over aider-men should, during the term of their holding over, constitute the entire body of the city council.
Our conclusion might possibly be changed, if we could see any ground whatever for anticipating any detriment or harm to a city of the first class because for the first year of its existence it should have two aldermen from each ward instead of one, but we fail to discover any, and none has been suggested by counsel in the able argument which he has presented. On the contrary it could be contended with reason and effect that it might be of material benefit to the municipality to have in its council for the first year of its existence one member from each ward who was presumably familiar with the then condition of the municipal affairs.
The judgment will be affirmed.

Affirmed.

Thomson, J., not sitting.